UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ALTHEA BERNSTEIN,

Plaintiff,

v.

Case No. 24-cv-892-pp

SUPERIOR AIR-GROUND AMBULANCE SERVICE OF WISCONSIN, INC.,

Defendant.

---

**ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (DKT. NO. 40), GRANTING IN PART PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF SERVICE AWARD (DKT. NO. 41), GRANTING PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS (DKT. NO. 43) AND DISMISSING CASE WITH PREJUDICE**

---

The plaintiff filed a collective and class action on behalf of herself and similarly situated current and former hourly-paid, non-exempt employees of the defendant. Dkt. No. 1. According to the plaintiff, the defendant operated a compensation system that failed to compensate the plaintiff and other current and former hourly-paid, non-exempt employees for all hours worked and performed for earned and agreed "Paperwork Bonuses" under the defendant's "Paperwork Bonus" policy in violation of Wisconsin's Wage Payment and Collection Law (WWPCL) and the federal Fair Labor Standards Act (FLSA). Dkt. No. 1 at ¶2.

In June 2026, the court preliminarily approved the parties' settlement and certified a Rule 23 class under the WWPCL. Dkt. No. 36 at 2. The parties

filed a joint motion for settlement approval, dkt. no. 40; the plaintiff filed an unopposed motion for approval of the service award, dkt. no. 41, and an unopposed motion for attorneys' fees and costs, dkt. no. 43.

The court held a hearing on October 26, 2026 to determine whether the court should approve the settlement agreement as fair, reasonable and adequate and whether the court should enter the proposed final order approving the settlement agreement. Dkt. No. 50. For the reasons explained below, the court will approve the parties' settlement agreement as fair and reasonable and will approve the plaintiff's request for attorneys' fees and costs. The court also will approve the plaintiff's request for a service award, but will exercise its discretion and reduce the service award to $2,500.

## I. Joint Motion for Settlement Approval (Dkt. No. 40)

The Rule 23 class action settlement requires judicial approval. The Rule 23 class action settlement also requires a hearing—the court may approve the settlement only after a hearing and on a finding that the settlement is fair, reasonable and adequate. Federal Rule of Civil Procedure 23(e)(2). Rule 23(e)(2) requires consideration of the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

The considerations in the rule overlap with the factors articulated by the Seventh Circuit:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) [the] stage of the proceedings and the amount of discovery completed.

Wong v. Accretive Health, Inc., 773 F.3d 859, 863 (7th Cir. 2014) (citations omitted).

A. Adequacy of Representation – Rule 23(e)(2)(A)

The court preliminarily certified the following Rule 23 class:

> The hourly-paid, non-exempt employees employed by Defendant in the State of Wisconsin between July 16, 2021 and May 29, 2026, who were potentially eligible to receive a "paperwork incentive" in the course of their employment, and who do not timely exclude themselves from this action ("Class Members").

Dkt. No. 36 at 2.

The court appointed the plaintiff, Althea Bernstein, to serve as the representative for the certified Rule 23 class. See id. The court is not aware of any conflicting interests between Bernstein and the other class members. There is no evidence in the record that class counsel—Scott Luzi, David Potteiger and Ben Slatky of the law firm of Walcheske & Luzi—have not

adequately represented the class during the litigation. With respect to the first factor, the court is satisfied that the class is adequately represented.

B. Arm's-Length Negotiations and Non-Collusiveness of Settlement Process – Rule 23(e)(2)(B) and the Seventh Circuit's First Factor

The Seventh Circuit has emphasized that the "most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." Wong, 773 F.3d at 863.

The parties have identified a genuine dispute about liability. The defendant maintains that it acted in "good faith" and that the parties disagreed over the extent of damages and whether any alleged violations by the defendant were willful such that that three-year FLSA statute of limitations would not apply. See Dkt. No. 47 at ¶20.

The parties reached the settlement agreement after approximately eleven months of discovery and after engaging in "arms-length negotiations" toward a resolution. See id. at ¶¶16-17. In support of the parties' joint motion for preliminary approval of their settlement agreement, class counsel discussed the strength of the plaintiff's claims and the defendant's defenses, as well as the monetary and non-monetary terms of settlement and procedures. See Dkt. 35 at 9-10. The court is satisfied that the parties negotiated at arm's length and in good faith, balancing the strength of the plaintiff's case on the merits against the amount offered in settlement. This factor weighs in favor of approving the settlement.

C. Adequacy of the Relief Provided by the Settlement—Rule 23(e)(2)(C) and the Seventh Circuit's Second and Sixth Factors

When considering the adequacy of relief, Rule 23(e)(2) instructs the court to take into consideration the (1) costs, risks and delay of trial and appeal, (2) the effectiveness of the proposed method of distribution, (3) the terms of any proposed award and (4) the agreements made in connection with the settlement. Fed. R. Civ. P. 23(e)(2). Similarly, the Seventh Circuit looks to the complexity, length and expense of further litigation, the stage of the proceedings and the amount of discovery completed. Wong, 773 F.3d at 863.

The settlement agreement provides for a gross settlement of $59,375, which includes (1) $24,375 for alleged unpaid overtime of the class members, (2) $25,000 in attorneys' fees and costs to class counsel and (3) $10,000 as a service award to the representative plaintiff. Dkt. No. 34-1 at 8–9. Each settlement class member will receive a *pro rata* share of the net fund with unclaimed amounts reverting to the defendant. See id.

1. *The Costs, Risks and Delay of Trial and Appeal—Rule 23(e)(2)(C)(i)*

This case has been pending for a little over two years. The parties exchanged information through formal and informal discovery relating to the defendant's compensation policies and practices and the plaintiff took a Rule 30(b)(6) deposition of the defendant's corporate designee. Dkt. No. 37 at ¶16; Dkt. No. 35 at 11. The parties acknowledge that this case would have required continued time, effort, expense and risk had litigation continued. Dkt. No. 47 at ¶22. Before this case could go to trial, there likely would have been

additional discovery and motion practice for both class certification and summary judgment. Id.

2. *The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims—Rule 23(e)(2)(C)(ii)*

The parties' settlement agreement provides a reasonably effective method of distribution of the settlement fund to class members. There are 941 individuals (including the named plaintiff) who are Rule 23 class members. Dkt. No. 40 at 3; Dkt. No. 47 at ¶24. The settlement agreement outlines the method of distributing checks to the class members. Settlement checks will be mailed to class counsel via U.S. mail within thirty days following the "Approval Order" of the settlement agreement, defined as the "order to be entered by the Court that gives final approval to the Settlement and Agreement, enters Final Judgment, and dismisses the Lawsuit with prejudice." See Dkt. No. 34-1 at 3, 7, 9. The settlement checks received by class counsel will be mailed "promptly," but no sooner than the Effective Date—defined as "a date which is thirty (30) days after entry of Final Judgment"—has passed. See id. at 3, 9. The mailed settlement checks will expire ninety days after issuance. See id. at 3, 7. If a class member reports a settlement check lost or destroyed, the defendant will stop payment on the original check and reissue a new check. Id. at 7.

3. *The Terms of any Proposed Award of Attorneys' Fees, Including Timing of Payment—Rule 23(e)(2)(C)(iii)*

The settlement agreement provides for payment of $25,000 in attorneys' fees and costs. Dkt. No. 34-1 at 8. The agreement provides that the attorneys' fees and costs (and the service award, if the court approves it) will be

distributed within thirty days after the approval order. Id. at 9. As the court will discuss below, the amount of attorneys' fees and costs is fair and reasonable, but although a service award is fair and reasonable, the amount of the award requested by the plaintiff is not and the court will reduce the amount of the service award.

4. *Any Agreement Required to Be Identified Under Rule 23(e)(3)—Rule 23(e)(2)(C)(iv)*

The parties have not identified any agreement other than the settlement agreement itself that must be considered under Rule 23(e)(3).

The adequacy of relief weighs in favor of approving the agreement.

D. Equitable Treatment of Class Members—Rule 23(e)(2)(D)

All class members are entitled to a *pro rata* share and will receive the same treatment. This factor weighs in favor of approving the agreement.

E. The Amount of Opposition to the Settlement—the Seventh Circuit's Third and Fourth Factors

The court is not aware of any opposition to the settlement. The plaintiff's counsel attests that only four individuals requested exclusion from the settlement and that no one has objected to the settlement. See Dkt. No. 47 at ¶¶24, 27; Dkt. No. 45 at ¶11, Dkt. No. 46 at ¶14. This factor weighs in favor of approving the agreement.

F. The Opinion of Competent Counsel—The Seventh Circuit's Fifth Factor

Counsel for both parties agree that the settlement agreement is fair, reasonable and adequate. Dkt. No. 40 at 2-3; Dkt. No. 47 at ¶19. Attorney Slatky filed a declaration regarding the adequacy of the settlement and the reasonableness of class counsel's fees. Dkt. No. 47 at ¶¶11-15, 19. Attorney

Slatky opines that the settlement is "an excellent monetary recovery" for the class and that class members "will receive a recovery likely exceeding the amount Settlement Class Members could have been owed during the statutory period regardless of the outcome of remaining litigation." Id. at ¶23. This factor, too, weighs in favor of settlement.

G. Final Approval

After reviewing the settlement agreement, hearing from counsel at the October 26 hearing and considering all the above factors, the court will grant the parties' joint motion for approval of the settlement.

## II. Plaintiff's Motion for Approval of Service Award (Dkt. No. 41)

The plaintiff requests a service award of $10,000. Dkt. No. 41. "In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiffs have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions and (3) the amount of time and effort the plaintiff expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998). The amount of the service award is within the court's discretion. See Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc., 897 F.3d 825, 834 (7th Cir. 2018). And it is within the court's discretion to adjust the service award if warranted. See id. at 834-35 (affirming court's reduction of service award from $15,000 to $1,000).

Class counsel attests that the requested $10,000 service award reflects the contributions the representative plaintiff provided during the litigation, the risks she assumed by agreeing to be the "face" of the Rule 23 class and the

favorable result achieved on behalf of the class. See Dkt. No. 47 at ¶¶28-31. Class counsel advises that the representative plaintiff took the following actions:

- provided counsel with "documents and information concerning the compensation she received, including the "paperwork incentive," such that a potential wage claim was identified;"
- "learned about how nondiscretionary compensation is supposed to be included in her regular rate for the purpose of calculating her overtime compensation owed;"
- "agreed to bring her wage claim not just on her behalf, but on behalf of all other similarly affected current and past employees of Defendant;"
- "communicated with and answered questions from her counsel;"
- "kept informed on the status of the litigation;"
- "consulted with her counsel regarding damages and potential case outcomes;"
- "authorized this case's resolution on the terms now encompassed in the parties' Settlement Agreement;" and
- "was willing to do whatever her attorneys asked of her in furtherance of the case."

Id. at ¶30.

Class counsel states that exclusive of the service award, the representative plaintiff stands to receive approximately $25.90 from the settlement's net fund, which she has not received more than two years after the complaint was filed because she agreed to be a named plaintiff in a class action. Id. at ¶32. Class counsel states that the representative plaintiff was not deposed and did not testify at trial. See id. at ¶35.

None of this information details the amount of time and effort the plaintiff expended in pursuing the litigation—one of the factors the Seventh Circuit listed in Cook. Class counsel did not provide any information about how much time the representative plaintiff devoted to the litigation (reviewing discovery materials, pleadings, the settlement agreement) or how many times she met or communicated with counsel. At the October 26, 2026 hearing, class counsel advised the court that his firm had not been keeping records of how much time named plaintiffs spent on such activities, though he speculated that the firm might change its practice based on the court's concerns. He emphasized, however, that the plaintiff had had to meet with counsel several times. When the court asked whether the firm's own billing records might reveal how many times the named plaintiff had met with counsel, and for how long, counsel expressed concern that the firm would be required to "extract" that information from its more general billing records. In other words, counsel could not tell the court how much time and effort the plaintiff had expended in pursuing the litigation, and was not able to satisfy one of the Cook factors.

Instead, the plaintiff focused on a different factor—one *not* mentioned by the Seventh Circuit in Cook. The plaintiff asserts that the $10,000 service award is appropriate because it is within the range of other recent awards approved by courts in this district. Id. at 13 (citing Lee v. UL LLC, Case No. 17-cv-1617, Dkt. No. 59 (Nov. 25, 2019) (Judge Griesbach.) ($20,000); Stirmel v. S&C Electric Co., Case No. 20-cv-347, Dkt. No. No. 44 (March 5, 2021) (Judge Adelman) ($20,000); Cooper v. OS Restaurant Srvs., LLC, *et al.*, Case No. 20-

cv-240, Dkt. No. 57 (June 9, 2021) (Judge Adelman) ($10,000); Mitchell v. Trilliant Food and Nutrition, LLC, Case No. 19-cv-147, Dkt. No. 185 (Sept. 2, 2021) (Judge Griesbach) ($15,000); Newman v. Luvata Appleton LLC, Case No. 22-cv-942, Dkt. No. 39 (Aug. 7, 2023) (Judge Griesbach) ($20,000); Solem v. McCain Foods USA, Inc., Case No. 22-cv-137, Dkt. No. 50 (Aug. 21, 2023) (Judge Griesbach) ($20,000); Smith v. HellermannTyton Corp., Case No. 19-cv-1262, Dkt. No. 110 (Sept. 6, 2023) (Judge Adelman) ($10,000); Kolbow, *et al.* v. API Heat Transfer Inc., *et al.*, Case No. 22-cv-451, Dkt. No. 40 (Sept. 21, 2023) (Judge Stadtmueller) ($11,000); Ciha v. Masters Gallery Foods Inc., Case No. 21-cv-1405, Dkt. No. 39 (Oct. 30, 2023) (Mag. Judge Dries) ($15,000); Sanders v. Mid-City Foundry Co., Case No. 23-cv-318, Dkt. No. 30 (Mar. 4, 2024) (Mag. Judge Duffin) ($10,000)).

Class counsel attests in his declaration that each of the cases cited was selected because his firm served as class counsel in the case and the circumstances concerning the named plaintiffs' contributions were comparable to the named plaintiff's contributions in this case. See Dkt. No. 47 at ¶¶33-35; see also Dkt. No. 42 at 13-15. The plaintiff also argues that the requested $10,000 service award is reasonable because this is the amount the parties agreed to in the settlement and none of the 944 noticed class members objected to the settlement or the proposed service award. Dkt. No. 42 at 15-16.

In support of the requested $10,000 service award, the plaintiff argues that the reasonableness of the award "can only be derived from a comparison of the amount requested in light of the named plaintiff's service provided, risks

assumed, and results obtained, to awards approved in similar cases under similar circumstances." Id. at 6. The plaintiff maintains that "so long as the requested service award and the surrounding circumstances compare favorably to service awards approved in similar litigation with similar circumstances, there should be no clear reason to withhold approval of the requested service award absent extenuating circumstances." Id. at 6-7. The plaintiff argues that placing greater weight on the amount of time the named plaintiff devoted to the litigation would incentivize a plaintiff to protract the litigation to justify a larger service award. Dkt. No. 42 at 9-10.

This argument is not persuasive. The Seventh Circuit has recognized that service awards "are designed to compensate named plaintiffs for the costs incurred in performing their role as class representatives—costs above and beyond what they would bear as ordinary class members." Scott v. Dart, 99 F.4th 1076, 1082-83 (7th Cir. 2024). In some circumstances, such as an employment class action like this case, service awards may compensate the named plaintiff for the potential risk of retaliation or stigmatization from current or former employers. See id. at 1083. But although a named plaintiff's services, even if minimal, will justify an award, see id., the amount of the award must be reasonably connected to the actual contributions made by the named plaintiff and the risks the plaintiff accepted as the class representative, see Hoppe v. R.R. Donnelley & Sons Company, Case No. 25-cv-839-BBC, 2026 WL 1898730 at *3 (E.D. Wis. June 30, 2026) ("The service award must be tethered to the actual service the plaintiff performed and risks incurred.").

Service awards approved in other cases may, in some circumstances, provide a useful guidepost for assessing the reasonableness of the amount of an award, but reliance solely on service awards approved in other cases does not get at the heart of the purpose of a service award, and carries risks. See id. at *5 (Judge Conway explained that service awards in other cases must be "viewed with caution" because "fixing any sort of standard service award" "can quickly lead to a snowball effect whereby courts approve slightly larger and larger numbers based on the premise that they are close to figures approved by preceding courts"). Overreliance on tacking reasonableness to other approved service awards can obscure the purpose of the award: recognizing the named plaintiff's actual contributions to the overall class.

An examination of the cases highlighted by the plaintiff and other cases in which class counsel has appeared (illustrated by the chart below) reinforces Judge Conway's justified concern with overreliance on service awards approved in other cases.[1] See id.

---

[1] The amounts referenced in the chart are taken from the settlement agreements approved in each case. See Lee, Case No. 17-cv-1617, Dkt. No. 55-1; Solem, Case No. 22-cv-137, Dkt. No. 30-1; Smith, Case No. 19-cv-1262, Dkt. No. 93-1; Newman, Case No. 22-cv-942, Dkt. No. 25-1; Mitchell, Case No. 19-cv-147, Dkt. No. 172-1; Cooper, Case No. 20-cv-240, Dkt. No. 21-1; Ciha, Case No. 21-cv-1405, Dkt. No. 26; Kolbow, Case No. 22-cv-451, Dkt. No. 23-1; Stirmel, Case No. 20-cv-347, Dkt. No. 16-1; Hoffman v. Inland Flexo, LLC, Case No. 23-cv-103, Dkt. No. 18-1; Blanks-Austin v. Clarity Care, Inc., Case No. 22-cv-1553, Dkt. No. 28-1; McWilliams v. Skana Aluminum Co., Case No. 22-cv-1179, Dkt. No. 31; Hunt v. Greif, Inc., *et al.*, Case No. 22-cv-980, Dkt. No. 37-1; Harrison v. Sunny Ridge Nursing & Rehab. Center LLC, Case No. 20-cv-197, Dkt. No. 35-1; Esquibel v. Legacy Flexo Corp., Case No. 24-cv-1000, Dkt. No. 19-1; Bohnert v. RB Royal Indus., Inc., Case No. 23-cv-141, Dkt. No. 34-1; Sanders, Case No. 23-cv-318, Dkt. No. 28-1.

| Case Name | Gross Settlement Amount | Service Award |
|---|---|---|
| Lee v. UL LLC | $1,620,000 | $20,000 |
| Solem v. McCain Foods USA, Inc. | $1,424,855 | $20,000 |
| Smith v. HellermannTyton Corp. | $1,376,810 | $10,000 |
| Newman v. Luvata Appleton LLC | $1,069,775.82 | $20,000 |
| Mitchell v. Trilliant Food and Nutrition, LLC | $1,000,000 | $15,000 |
| Cooper v. OS Restaurant Servs., LLC, *et al.* | $990,000 | $10,000 |
| Ciha v. Masters Gallery Foods Inc. | $785,823.90 | $15,000 |
| Kolbow, et al. v. API Heat Transfer Inc. *et al.* | $500,000 | $11,000 |
| Stirmel v. S&C Elec. Co. | $350,000 | $20,000 |
| Hoffman v. Inland Flexo, LLC | $205,000 | $7,500 |
| Blanks-Austin v. Clarity Care, Inc. | $165,000 | $7,500 |
| McWilliams v. Skana Aluminum Co. | $152,000 | $7,500 |
| Hunt v. Greif, Inc., et al. | $150,000 | $5,000 |
| Harrison v. Sunny Ridge Nursing & Rehab. Center LLC | $138,000 | $5,000 |
| Esquibel v. Legacy Flexo Corp. | $115,000 | $5,000 |
| Bohnert v. RB Royal Indus., Inc. | $45,000 | $5,000 |
| Sanders v. Mid-City Foundry Co. | $39,845.25 | $10,000 |

In each of these cases, class counsel attests that the named plaintiff's contributions were substantially similar—in this court's view, minimal. See Dkt. No. 47 at ¶¶34-35; see also Mayberry v. Wolter, Inc., Case No. 24-cv-424, Dkt. Nos. 47 at 15-17, 49 at ¶¶12-15 (E.D. Wis.). But comparing the service awards approved in other cases does not explain why a $10,000 service award *in this particular* case is reasonable. Without digging into the facts and circumstances of each case—and sometimes, even after doing so—the court cannot tell why the plaintiffs in *those* cases received the awards they received. Was it due to the amount of time they spent on working on the case? Was it because they were current employees who faced a risk of retaliation for agreeing to be the "face" of the litigation?

Or might it have been the amount of the service award in relation to the gross settlement amount? With the exception of Sanders, the cases that the plaintiff argues are comparable—Lee, Stirmel, Cooper, Mitchell, Newman, Solem, Smith, Kolbow, and Ciha—had gross settlement amounts that far exceed the $59,375 gross settlement in this case. It appears that class counsel selected cases with comparable service awards without considering comparable gross settlement amounts. For instance, the named plaintiffs in Hoffman, Blanks-Austin and McWilliams were awarded $7,500 for similarly minimal contributions while the gross settlement amounts in those cases were greater than the $59,375 this case. Why did those named plaintiffs receive a $7,500 award for comparably minimal contributions, *less* than the $10,000 service award that the plaintiff requests for doing similarly minimal work in a case with a smaller gross settlement amount? Why did the named plaintiffs in Lee and Cooper receive a $20,000 service award when the gross settlement amounts ($1,620,000 v. $350,000) were substantially different? The $10,000 service award in Sanders is particularly curious given the $39,845.25 gross settlement. Why was the named plaintiff in Sanders deserving of a $10,000 service award while the named plaintiff in Bohnert was deserving of only a $5,000 award on a $45,000 gross settlement? The $10,000 service award in Sanders appears to be an outlier, and the plaintiff does not address the relationship between the gross settlement amount and the service award at all.

On the one hand, one could argue that service awards for comparably minimal contributions by named plaintiffs would result in roughly similar

service awards regardless of the size of the gross settlement amount achieved. As Judge Conway reasoned, if the size of the service award was tethered solely to the size of the gross settlement amount, the service award would be more like a bounty rather than an award to recognize the named plaintiff's service to the class. See Hoppe, 2026 WL 1898730, at *6 ("A representative plaintiff's service award . . . is not intended to be akin to whistleblower's bounty in a qui tam action." (citing Altnor v. Preferred Freezer Servs., Inc., 197 F. Supp. 3d 746, 772 (E.D. Pa. 2016)). On the other hand, the amount of the gross settlement could shed some light on another Cook factor: the degree to which the class has benefited from the named plaintiff's actions (even if minimal). Theoretically, a named plaintiff could provide evidence showing a correlation between her efforts—even if minimal—and a particularly successful gross settlement amount. But the plaintiff here provided no such evidence.

In sum, relying on service awards approved in other cases, without more detail, does not allow a court to fairly and meaningfully assess whether the award *this* named plaintiff requests in *this* case would appropriately recognize and compensate the named plaintiff's actual contributions to the class.

The plaintiff's argument that a $10,000 service award is reasonable because the defendant approved it and no class members objected to the settlement is not compelling. The defendant agreed to pay a lump sum amount of $59,375. To the defendant, it matters little how the pie gets divided among class counsel, the named plaintiff and the class members. More important to

the defendant is an end to the litigation for an amount it is willing to accept as a tradeoff for the risks and costs of further litigation.

And it is not surprising that no class members objected to the settlement on account of the requested service award. With a $10,000 service award and $25,000 allocated for attorneys' fees and costs, the named plaintiff and each class member's *pro rata* share of the remaining net fund is approximately $25.90. Reducing the service award to $2,500 and reallocating the $7,500 to the net fund will increase each class member's *pro rata* share to approximately $33.87. Such a small difference ($7.97) likely would discourage any individual class member from investing the requisite time and effort to file an objection to the settlement agreement. See Dkt. No. 34-1 at 20-21 (explaining how to object to the settlement).

At the October 26 fairness hearing, class counsel suggested that "service award" may be a misnomer and that such awards would be better characterized as "incentive awards," because they provide the named plaintiff an incentive to accept the risks as the representative of the class, rather than providing remuneration based on the amount of service or contributions the named plaintiff personally made to the litigation. Courts have used the terms "service award" and "incentive award" in the context of collective and class actions, but those terms have been used interchangeably. See Scott, 99 F.4th at 1082-83 (discussing "incentive awards"); Espenscheid v. DirectSat USA, LLC, 688 F.3d 872, 874-77 (7th Cir. 2012) (same); Cook, 142 F.3d at 1016 (same); Hyland v. Navient Corp., 48 F.4th 110, 123-24 (2d Cir. 2022)

(discussing "service award" and "incentive award" interchangeably); see also History and nomenclature of incentive awards, 5 Newberg and Rubenstein on Class Actions §17:2 (6th ed.) ("The first appearance of [the term service award] occurs around 2002 and there are about 1,900 uses of it in federal case law thereafter. By contrast, about 3,200 district and appellate decisions employ the term 'incentive award.' The courts appear to utilize the terms interchangeably."). Regardless of what term is used to describe the award itself, the Seventh Circuit has said that the main purpose of the award is to compensate named plaintiffs for costs incurred in performing their role as class representative, including the "the time and effort that named plaintiffs must spend learning about the case . . . sitting for depositions; complying with discovery requests; monitoring class counsel; and reviewing and approving any proposed settlement agreements." Scott, 99 F4th at 1083.

That said, the Seventh Circuit has recognized that, particularly in employment suits like this one, service awards "*may* also recognize the added risks of retaliation or stigmatization that named plaintiffs assume in participating in a lawsuit against their current or former employers." Scott, 99 F.4th at 1083 (emphasis added) (citing Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1305 (2006); Rationale for incentive awards, 5 Newberg and Rubenstein on Class Actions §17:3 (6th ed.))). At the October 26 fairness hearing, the court asked class counsel whether the plaintiff was still employed with the defendant at the time this lawsuit was filed, or whether by then she

was a former employee. Counsel did not have that information at hand but agreed to provide it. On October 27, 2026, counsel filed a letter advising the court that prior to the lawsuit being filed, the plaintiff had voluntarily resigned her employment with the defendant. Dkt. No. 51. (The court appreciates counsel's prompt response.) That means that this was not a situation in which the plaintiff faced the risk of on-the-job retaliation from the defendant for having agreed to act as the face of litigation against it.

But counsel argued at the October 26 hearing that there was another risk faced by named plaintiffs such as the plaintiff here—the risk that future employers might be less likely, or unlikely, to employ her upon discovering from the public record that she had been a named plaintiff in a suit against her former employer. See, *e.g.*, Scott, 99 F.4th at 1083.

Counsel conceded that this was a new argument, one the plaintiff had not raised in the briefing. Without deeply researching the issue, the court concedes that such a risk might exist, albeit one faced by any named plaintiff in any class action employment lawsuit and one that would be difficult to quantify. The court cannot perceive how the simple existence of this risk, without more, would justify a $10,000 service award for the named plaintiff in this case and a lower or higher service award for a named plaintiff in some other employment lawsuit.

This court cannot speak for Judge Conway, but it suspects that both he and this court are looking for more concrete information justifying the service awards being requested: hours spent working on the litigation, number of

meetings with counsel, analysis of how the named plaintiff's efforts impacted the amount of the settlement, any evidence that the named plaintiff faced retaliation from the defendant employer or was considered unemployable by future employers. Even some of this kind of evidence could enable judges to perform one of the core functions of their jobs: explaining *why* they are making the service award decision they are making. The fact that other judges have approved similar awards is not a sufficient explanation—especially when the court cannot determine whether those other awards actually are similar in nature (rather than just in amount). The court hopes that in future cases requesting service awards, counsel can provide some of the types of information the court has described.

The plaintiff should receive an award for her service to the class. But the services that she appears to have performed in this case and whatever risks she incurred as the representative of the class do not support a $10,000 service award. The plaintiff's efforts and time devoted to the litigation appear to this court to have been minimal. She has not been deposed and it does not appear that the defendant ever requested her deposition. She was a former employee of the defendant and so did not face the risk of retaliation. The plaintiff has not identified any specific risk of retaliation she faced by participating in a class action against her former employer or provided evidence that she faced any difficulty securing a new job that might justify a more significant service award. See, *e.g.*, Cook, 142 F.3d at 1016 (affirming $25,000 incentive award in class action that resulted in structural reforms to employee

pension fund and cash recovery of more than $13 million and where named plaintiff "spent hundreds of hours with his attorneys," provided the attorneys with an "abundance of information" and "[m]ost significantly . . . reasonably feared workplace retaliation").

Where the named plaintiff's services have been minimal, the court finds that a $2,500 service award is reasonable. See Hoppe, 2026 WL 1898730, at *3 ("[W]hen a case settles with minimal involvement from the representative plaintiff, the service award will likewise be minimal."). The court will approve the plaintiff's request for a service award, but will exercise its discretion to reduce the amount of the requested service award to $2,500. Per the terms of the settlement agreement, the $7,500 reduction of the requested service award will be reallocated to the net fund to be distributed to the class members. See Dkt. No. 34-1 at 8-9 (paragraph 3.3(B)).

## III. Plaintiff's Motion for Attorneys' Fees and Costs (Dkt. No. 43)

Class counsel states that at the outset of the litigation, counsel agreed with the plaintiff to be solely responsible for their fees and costs in the event of an adverse result. Dkt. No. 47 at ¶7. Class counsel asks the court to approve attorneys' fees and costs in the total amount of $25,000 as contemplated by the settlement agreement. Dkt. No. 43.

Under the FLSA, the plaintiff may seek reimbursement for fees and costs. 29 U.S.C. §216(b). In addition, successful litigants may seek fees and costs under Wis. Stat. §109.03(6). In awarding attorneys' fees, courts have discretion to use either a percentage of the fund or lodestar methodology. Florin v.

Nationsbank of Georgia, N.A., 34 F.3d 560, 566 (7th Cir. 1994). The Seventh Circuit instructs courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." In re Synthroid Mktg. Litig., 264 F.3d 712, 718 (7th Cir. 2001) ("Synthroid I").

Class counsel has calculated fees using the lodestar method, which is "frequently employed in common fund cases." Harman v. Lyphomed, Inc., 945 F.2d 969, 973 (7th Cir. 1991). To calculate the lodestar, the court "[m]ultipl[ies] the hours reasonably expended by the reasonable hourly rates." Id. at 974. "A reasonable hourly rate is based on the local market rate for the attorney's services." Montanez v. Simon, 755 F.3d 547, 553 (7th Cir. 2014).

Class counsel asks for an award of $25,000 out of the $59,375 gross settlement award—a little less than half of the gross settlement amount. The time spent on this case and counsels' hourly rates appear reasonable. And although counsel did not provide time records, Attorney Luzi recounted in his declaration the work performed on the case. Dkt. No. 45 at ¶10. A review of the docket reveals that class counsel filed a number of documents over the course of the litigation, including the complaint and disclosure statement, several motions to extend the time to file for conditional certification, three status reports, a stipulation for class certification, the joint motion for preliminary settlement approval with a supporting brief and the current motions and supporting briefs. Counsel also attended the January 7, 2025 scheduling conference and the October 26, 2026 fairness hearing.

Class counsel attest that they spent time "to legally and strategically discuss, analyze, and debate the substantive, procedural, and practical aspects of the case." Dkt. No. 47 at ¶18. They further contend that "the complexity of the substantive procedural and legal issues, e.g. the class/collective nature of the case, necessitated that the firm expend time and effort necessary to advance the case's legal theories and causes of action, developing the factual narrative, exchanging information and documentation, and engaging in good-faith communications towards resolution." Id.

Overall, the firm has devoted ninety-one hours to the case. Dkt. No. 45 at ¶10. The plaintiff's attorneys bill at $450 and $400 an hour, resulting in approximately $38,345 of work plus current expenses of $5,423.69. Id. This totals approximately $43,768.69, which is more than the requested $25,000. Consequently, the requested attorneys' fees represent a notable discount from the actual amount spent on the litigation. The court will not make any adjustment and will approve the unopposed award of fees and costs.

## IV. Conclusion

The court **GRANTS** the joint motion for approval of the settlement. Dkt. No. 40.

The court **APPROVES** the settlement as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure.

The court **APPROVES** the settlement payments to the settlement class. The defendant must direct its designated third-party administrator to mail the settlement checks to the settlement class via U.S. Mail within the period

proscribed in the settlement agreement. See Dkt. 34-1 at 3, 9. The settlement class members each have ninety days to cash their individual checks. If any settlement check is not cashed within the time allotted, the amounts must revert to the defendant. Any settlement class member who cashes their settlement check is bound by the settlement.

The court **GRANTS IN PART** the plaintiff's unopposed motion for approval of the named plaintiff's service award. Dkt. No. 41. The court **ORDERS** that the requested $10,000 service award to the named plaintiff is **REDUCED** to $2,500.

The court **GRANTS** the plaintiff's unopposed motion for approval of attorneys' fees and costs. Dkt. No. 43. The court **APPROVES** the requested attorneys' fees and costs in the amount of $25,000.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 30th day of October, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**